IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MIRABAHN CAIROBE,

    Plaintiff,

v.

ZWICKER & ASSOCIATES, P.C.,

    Defendant.

CIVIL ACTION FILE NO.:

1:23-cv-486-CAP-JKL

## ORDER AND NON-FINAL REPORT AND RECOMMENDATION

This consumer action is presently before the Court on Defendant Zwicker and Associates, P.C.'s motion for summary judgment [Doc. 25], Plaintiff Mirabahn Cairobe's motion to dismiss [Doc. 35 at 1-7], the parties' competing requests for sanctions [Doc. 29; Doc. 35 at 7-11], and Attorney Joon Jeong's request to withdraw as counsel for Plaintiff [Doc. 40].

For the reasons that follow, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** [Doc. 25]; that Plaintiff's motion to dismiss be **DENIED AS MOOT**; that Defendant's request for sanctions be **GRANTED** [Doc. 29]; and that Plaintiff's request for sanctions be **DENIED** [Doc. 35]. Mr. Jeong's request to withdraw, meanwhile, is **GRANTED**. [Doc. 40.]

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The undersigned begins with Defendant's motion for summary judgment, in which Defendant argues that it should be granted judgment on all of Plaintiff's claims.  [Doc. 25.]

On February 2, 2023, Plaintiff filed the present action against Defendant [Doc. 1], alleging that it violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") in connection with its efforts in December 2021 and on occasions throughout 2022 to collect a roughly $15,000 debt incurred on an American Express business credit account issued to Cairobe Holdings [1] and Mirabahn Cairobe, which Plaintiff alleged in her complaint and amended complaint that "she did not open" [*see id.*; *see also* Doc. 6 (Am. Compl.) ¶¶ 8-9, 13].  Plaintiff asserted FDCPA claims based upon Defendant purportedly contacting Plaintiff directly when she was represented by an attorney, failing to validate the alleged debt,[2] and attempting to collect on the debt at all, since she purportedly had not incurred the charges.  [Doc. 6 at ¶¶ 25-31.]

---

[1] Plaintiff admitted that she incorporated Cairobe Holdings in 2019.  [*See* Doc. 30-2 (Cairobe Decl.) ¶ 3.]

[2] Plaintiff's alleged concerns about the debt validation were spread across two different causes of action under the FDCPA, but that is not material to the resolution of the present motions.  [*See* Docs. 1, 6.]

On June 5, 2023, and before discovery had expired, Defendant filed its motion for summary judgment as to all of Plaintiff's claims, arguing (1) that the debt was accrued in connection with a business account and therefore outside of the scope of the FDCPA, (2) that Defendant in fact sent Plaintiff a written debt validation, and (3) that when Defendant contacted Plaintiff's attorney—specifically, her present counsel, Attorney Gary Hansz—he stated that his firm did not represent her in connection with the debt.  [Doc. 25.]

Plaintiff initially opposed summary judgment, submitting sworn statements asserting that she never applied for the account, that she never authorized nor made any of the charges or payments on the account, and that she was the victim of identity theft.  [*See* Doc. 30 at 1-5; *see also* Doc. 30-2 (Cairobe Decl.).][3]  Mr. Hansz also submitted a sworn statement affirming that when Defendant contacted his firm—Credit Repair Lawyers of America ("CRLA")—in October 2022, he stated that CRLA represented Plaintiff only in connection with her federal claims under the "FCRA" (presumably, the Fair Credit Reporting Act) but not in relation to the underlying debt or in relation to a state court action against her seeking to collect

---

[3] On September 28, 2023, Plaintiff filed a "notice of withdrawal" of her declaration.  [Doc. 45.]

3

the debt.  [*See* Doc. 30 at 5-7; Doc. 30-4 (Decl. of Gary Hansz).]  Notably, Mr. Hansz did not mention the FDCPA, did not otherwise suggest that he represented Plaintiff in relation to the debt underlying this action, and did not state or suggest that it would be inappropriate for Defendant to contact Plaintiff directly about the debt.  [*See id.*; *see also* Doc. 25-8 (transcript of Oct. 22, 2022 call).]  Additionally— and oddly—the state court action in which American Express sought to recover on the debt, which Mr. Hansz referenced and disclaimed representing Plaintiff in relation to, was neither filed nor served on Plaintiff until months after this call.[4] *See American Express Nat'l Bank v. Cairobe*, No. 2022CV02789 JP (Sup. Ct. Clayton Cnty.) (filed Dec. 19, 2022, and served on Plaintiff Feb. 13, 2023).

A few weeks before summary judgment briefing concluded, Defendant obtained and provided to Plaintiff's counsel two recordings of telephone calls between Plaintiff and American Express representatives, in which Plaintiff

---

[4] At the hearing on the pending motions, Mr. Hansz stated that, at the time of the call, he had been told by "local counsel," that there was a pending state action; Mr. Hansz specifically mentioned Mr. Lawrence Silverman, Plaintiff's initial CRLA counsel in this action, implying that Mr. Silverman notified him of a state court action against Plaintiff.  However, that could not have happened, as Mr. Silverman did not join CRLA until February 28, 2023.  [*See* Doc. 36-15 (Decl. of Lawrence Silverman).]  And, of course, there could not have been any "local counsel" reporting to Mr. Hansz because neither this case nor any collection action was pending at the time.

4

admitted that the account at issue in this case was indeed her own.  [*See* Doc. 36-14 (Decl. of Sam McDermott); Doc. 35-2 (Decl. of Joon Jeong); Doc. 35-5 (email between counsel).]  According to her counsel, "Plaintiff [only then] remembered after hearing the recordings that the subject account belonged to her."  [Doc. 35-1 at 4-5.]  It remains entirely unexplained how Plaintiff forgot that she opened the account; why she never remembered she was responsible for the account during the pendency of this action or the state action seeking to recover on the debt, or when she filed reports—in February, March, and April of 2022—with the Federal Trade Commission and law enforcement claiming fraud and identity theft [*see* Doc. 6 ¶¶ 10, 12, 16]; and what exactly she remembered about the account and debt when presented with an audio recording of herself.  While it is clear that Plaintiff and/or her counsel misrepresented the facts of this case, it is unclear why those misrepresentations were made and whether those misrepresentations were fully deliberate.

Defendant thereafter asked that Plaintiff withdraw what it believed was a summary judgment response incorporating demonstrably false sworn testimony or otherwise stipulate to summary judgment; and on July 21, 2023, it sent Plaintiff a safe harbor warning letter under Federal Rule of Civil Procedure 11.  [*See* Doc. 35-2 at 5; *see also* Doc. 35-7.]  But rather than withdraw its response or consent to

summary judgment against her, Plaintiff filed a motion to dismiss her claims, asking that each party bear its own costs and fees, but also asking for sanctions against Defendant and its counsel for engaging in "unreasonable and vexatious conduct" under 28 U.S.C. § 1927.  [Doc. 35-1 at 7-11.]

The undersigned now turns to Defendant's request for summary judgment.

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The movant carries its burden by showing the court that there is "an absence of evidence to support the nonmoving party's case."  C*elotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . .").

Significantly for present matters, clear statements and concessions made by a counsel at oral argument are binding judicial admissions and can be the basis for granting summary judgment.  *See* Fed. R. Civ. P. 56(c) ("The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, *and admissions on file*, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . .") (emphasis added); *see also Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997) (holding that unequivocal concessions and

admissions of counsel at oral argument may be held against the party represented by counsel); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (same); *Blanco v. Samuel,* No. 21-24023-CIV, 2022 WL 5241893, at *4 (S.D. Fla. Oct. 6, 2022) (collecting authority); *Jadael Inc. v. Elliott*, No. 6:05-CV-1623-ORL-DAB, 2007 WL 2480387, at *11 (M.D. Fla. Aug. 29, 2007) (same); *cf. Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) ("Indeed, facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.") (quotation marks and citation omitted).

On September 25, 2023, the undersigned held a hearing on the pending motions, including Defendant's motion for summary judgment. [*See* Docs. 42, 43.] At that hearing, the undersigned asked Plaintiff's counsel—in Plaintiff's presence and in unequivocal terms—whether there were any issues of fact precluding the entry of summary judgment in favor of Defendant, to which Mr. Hansz "agree[d]" that there were not, since the "account at issue" belonged to Plaintiff.  [*See* Doc. 43.[5]]  Plaintiff, who was present, made no objection.

---

[5] Although the official transcript has not yet been prepared, the Court has access to an audio recording of the September 25 hearing, which it utilized in relation to this report and recommendation.

Based upon this concession, the undersigned concludes that summary judgment in favor of Defendant is appropriate.  Congress enacted the FDCPA "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010).  To prevail on an FDCPA claim, a plaintiff must prove that:  (1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) (collecting cases).  The collection of actual or alleged obligations related to business or commercial debts is excluded from the FDCPA's coverage.  *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995).  In this case, Plaintiff has admitted she opened the account at issue in connection with her business, Cairobe Holdings, and that there are no issues of fact that otherwise preclude summary judgment in favor of Defendant.  As a result, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendant, and that Plaintiff's claims be dismissed with prejudice.

8

## PLAINTIFF'S MOTION TO DISMISS

Federal Rule of Civil Procedure 41(a)(2) allows for "an action [to] be dismissed at the plaintiff's request . . . by court order, on terms that the court considers proper."  As the Eleventh Circuit has explained:

> Although we have said that in most cases a voluntary dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit, the decision whether or not to grant such a dismissal is within the sound discretion of the district court and reviewable only for abuse of discretion.  And, when exercising its discretion in considering a dismissal . . . the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants.

*Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502, 1502-03 (11th Cir. 1991) (citations omitted); *see also Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1327 (11th Cir. 2004) ("The purpose of Rule 41(a)(2) is to freely permit the Plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced . . . .").  The crux of the inquiry is whether "'the defendant would lose any substantial right by the dismissal.'"  *Arias v. Cameron*, 776 F.3d 1262, 1268 (11th Cir. 2015) (quoting *Pontenberg v. Boston Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001)).  Regardless, a trial court enjoys broad discretion in determining whether to allow a Rule 41(a)(2) voluntary dismissal.  *Pontenberg*,

252 F.3d at 1255.

Predetermining this inquiry, however, is that fact that the undersigned has already recommended that Defendant be granted summary judgment and that Plaintiff's claims be dismissed with prejudice.  Should the district court adopt that recommendation, it would render Plaintiff's motion to dismiss moot.  *See Vaughan v. City of Sandy Springs*, No. 1:09-CV-2852-ODE-WEJ, 2012 WL 12952742, at *2 (N.D. Ga. Feb. 2, 2012) ("Because this Court has adopted the recommendation of the R&R and dismissed Plaintiffs' claims, Plaintiffs' subsequent motion to dismiss is moot."); *see also Aimiuwu v. Sophia Acad., Inc.*, No. 1:06-CV-01183-GET, 2008 WL 11406068, at *1 (N.D. Ga. Mar. 3, 2008) ("Defendant's motion for summary judgment and request for attorney fees is GRANTED.  Plaintiff's motion to dismiss with prejudice is DENIED.")  Accordingly, because the undersigned has already recommended that summary judgment be granted on Plaintiff's claims, it is further **RECOMMENDED** that Plaintiff's motion to dismiss be **DENIED AS MOOT**.

## THE PARTIES' REQUESTS FOR SANCTIONS

Separate from the underlying merits of the case, both Plaintiff and Defendant have moved for sanctions in relation to the attempted deposition of Plaintiff, noticed to take place on June 7, 2023.  [*See* Doc. 29 (Def. motion for sanctions);

Doc. 35 at 7-11 (Plaintiff's request for sanctions); *see also* Doc. 29-8 at 4-6 (deposition notice).]

## I. Background

It appears that the parties largely agree on the course of events giving rise to their competing sanction requests.   On May 8, 2023, defense counsel Manuel Newburger and Plaintiff's counsel Lawrence Silverman met for the parties' Rule 26(f) conference and, among other things, discussed deposing Plaintiff; Mr. Silverman—at the time, Plaintiff's only counsel—"indicated that he would soon be leaving [CRLA], but he said he would check with the firm's Michigan office to see if that date would work."  [Doc. 29-2 (1st Decl. of Manuel Newburger); *see also* Doc. 16 (joint preliminary report and discovery plan).]   Counsel thereafter exchanged emails, but progress on scheduling the deposition was thwarted by Mr. Silverman's departure from CRLA and the fact that no other CRLA attorney was admitted to practice law in this District.  [*See* Docs. 29-3 through 29-6 (emails exchanged by counsel regarding deposition).]

On May 15, 2023, having made no progress, Defendant noticed Plaintiff's

deposition for June 7, 2023, over three weeks away.[6] [*See* Doc. 29-8 at 4-6.] Then, on May 19, Defendant amended that notice to identify the location where the deposition would take place. [*See* Doc. 29-8 at 7-10.] Plaintiff lodged no objection as to the date, time, or location of the deposition, and Plaintiff did not move for any protective order to avoid proceeding with the deposition.

On June 5, 2023, two days before Plaintiff's scheduled deposition, Mr. Silverman moved to withdraw from the case. [Doc. 23.] Defendant filed a response to the motion that same day, highlighting that Plaintiff's deposition had been noticed for June 7, that no objections had been raised, and that Defendant had incurred travel expenses that could not be refunded at that late date. [Doc. 24. 1-2.] That same day, the Court issued an order observing that while Mr. Hansz had applied to appear *pro hac vice* in this case, that request had not been granted. [Doc. 26.] The Court then specifically deferred ruling on Mr. Silverman's motion to withdraw until Mr. Hansz secured alternate local counsel. [Doc. 26.] As a consequence, Mr. Silverman remained Plaintiff's only attorney of record who was licensed to practice in the case.

---

[6] The parties had agreed to exchange discovery by email, and Mr. Newburger transmitted the notice to Mr. Silverman on May 15, 2023. [See Doc. 29-8 at 2-3.]

The following day—one day before the scheduled deposition and while Mr. Newburger was traveling to Atlanta to attend it—Mr. Hansz emailed Mr. Newburger to explain that Mr. Silverman would not attend the deposition, that Plaintiff would not have local counsel available, but that Mr. Hansz would attempt to appear for the deposition remotely.  [Doc. 29-9.]  In response, Mr. Newburger explained:

> Mr. Hansz, I take your email as confirmation that Ms. Cairobe is available and ready to be deposed.  However, based on the Court's order of yesterday, it appears to me that Mr. Silverman is required to defend the deposition.  I do not mind if you attend the deposition, but you have no authority to act in this case.  I am already in Atlanta and ready to proceed tomorrow.

[Doc. 29-10.]  The two attorneys continued to exchange emails, with Mr. Hansz stating that Plaintiff would not appear without "an attorney," which given the context,[7] clearly meant "without Mr. Hansz" [Doc. 29-11]; and Mr. Newburger explaining that if the deposition were to be cancelled at the last moment, Defendant would "have no choice but to seek sanctions (unless your firm wishes to reimburse my time and expenses for this trip)."  [Doc. 29-12].  Mr. Hansz's final email that evening, and indeed his final email before Plaintiff's deposition, stated simply:

---

[7] That is, given Mr. Hansz insistence that Plaintiff's actual local counsel, Mr. Silverman, would not be in attendance.

"We are in the process of getting a new local counsel." [Doc. 29-13.]

Defense counsel appeared for the deposition as noticed. [Doc. 29-2 at 6-7.] Neither Plaintiff nor her counsel appeared at the scheduled time, nor for over an hour after it was scheduled. Based upon that, Mr. Newburger emailed Mr. Hansz, stating, "You and your client were due here at 9:00 AM for her deposition. I am about to declare this a[] nonappearance and seek sanctions. I will give you an additional 15 minutes to get here." [Doc. 29-14.] At approximately 10:30 am, defense counsel departed. [Doc. 29-2 at 7.] A bit over a week later, Defendant moved for sanctions against Plaintiff, asking that she "be ordered to pay the reasonable expenses and attorney fees incurred by it in connection with Plaintiff's failure to appear for her deposition." [Doc. 29-1 at 7.]

Upon receiving Plaintiff's summary judgment response on July 19, in which Plaintiff submitted sworn testimony disclaiming any knowledge of the account at issue in this case and reaffirming that she was the victim of identity theft, Mr. Newburger and his firm requested from their own client, American Express—who is not a party to these proceedings—any recordings of calls between it and Plaintiff. [*See* Doc. 36-1 (2nd Decl. of Manuel Newburger) at 7-8.] On July 10, 2023, Mr. Newburger was able to access the recordings American Express had obtained, and after receiving permission from American Express, produced them to Plaintiff's

14

new local counsel, Joon Jeong.  [*Id.* at 8.]

In response, Mr. Jeong proposed dismissing the case, but asked that the parties to bear their own costs and fees.  [Doc. 36-1 at 9.]  Defendant rejected that proposal—indeed it had a sanctions motion already pending before the Court—but still allowed that Plaintiff could withdraw her summary judgment response and agree to summary judgment in favor of Defendant.  [*Id.*]  Instead, Plaintiff moved to dismiss the case and submitted her own sanctions request.  [Doc. 35.]

## II.    The Parties' Arguments for Sanctions

The parties each move for sanctions under different authority.  Defendant asks for its attorney fees and expenses incurred by as a result of counsel's traveling to and from Plaintiff's doomed deposition (and in preparing its present motion),[8] seeking sanctions under Federal Rule of Civil Procedure 37(d)(1)(A), which provides for sanctions when a party fails to appear for a properly noticed deposition. [*See generally*, Doc. 29-1.]  Plaintiff, meanwhile, seeks all of its "reasonable attorney's fees and costs by Plaintiff in the prosecution of this action," under 28 U.S.C. § 1927, for what she considers to be unreasonable and vexatious conduct

---

[8] Defendant also asks that Plaintiff be compelled to sit for her deposition, but because her claims are due to be dismissed, the Court **DEEMS** this request **MOOT**. [*See* Doc. 29-1 at 7.]

by Defendant and its counsel:  (1) refusing to reschedule Plaintiff's deposition; (2) not disclosing the recordings of the calls between American Express and Plaintiff earlier in the litigation; and (3) threatening sanctions and "bully[ing] counsel into withdrawing its response to the motion to summary judgment and stipulate to the entry of judgment in Defendant's favor."   [Doc. 35-1 at 10-11.]   The Court addresses each request in turn below.

### III.   Defendant's Request Pursuant to Rule 37

Under Rule 37(d), a trial court may grant a motion for sanctions if a party fails to attend his own deposition after being properly served with a notice of the deposition.   Fed. R. Civ. P. 37(d)(1)(A)(i).   Importantly for present purposes, "[e]ither in lieu of, or in addition to, other sanctions, the district court '***must require***' either the party that failed to appear, or h[er] attorney, or both '[]pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *Lewis v. Leonard*, 716 F. App'x 910, 913 (11th Cir. 2017) (citing Fed. R. Civ. P. 37(d)(3)).   Defendant contends that sanctions are warranted because Plaintiff's deposition was properly noticed and Plaintiff's failure to appear was not substantially justified.   [Docs. 29-1, 33.]   Plaintiff, meanwhile, appears to argue that sanctions should not be imposed because (1) "an extreme sanction requires 'a

16

willful or bad faith failure'"; (2) there was "no urgency in conducting Plaintiff's deposition on June 7," since there was still adequate time to reschedule it during the discovery period; (3) "Plaintiff was prepared to go forward with her deposition on June 7, 2023"; and (4) Defendant failed to include a certification under Rule 37(d)(1)(B) that it had in good faith attempted to confer with Plaintiff without court action.  [Doc. 32 at 6-8.]

None of Plaintiff's arguments have merit.  Plaintiff first suggests that Defendant most show willfulness or bad faith to recover its fees and expenses.  [*See* Doc. 32 at 5 (citing *Malauetea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1342 (11th Cir. 1993).]  However, a review of the authority Plaintiff cites (rather than relying on the short excerpt provided in her brief), demonstrates that the Eleventh Circuit in *Malauetea* was addressing the requirements for imposing the "extreme sanctions" of ***default judgment or dismissal*** for refusing to obey a lawful court order, not the payment of fees and expenses for failing to appear at a deposition. *See Malauetea.,* 987 F.2d at 1342 ("[A] default judgment sanction requires a willful or bad faith failure to obey a discovery order.  Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment or dismissal.") (citation omitted).  To the contrary, the plain language of the Rule ***requires*** the Court to award fees and expenses incurred

17

by the failure to appear, unless the failure was "substantially justified" or other circumstances make an award of expenses "unjust." *See* Fed. R. Civ. P. 37(d)(3); *see also Joe Hand Promotions, Inc. v. Bowers*, No. 1:18-CV-3859-MHC, 2020 WL 4557072, at *2 (N.D. Ga. Feb. 25, 2020) ("No showing of willfulness or bad faith or fault is required.") (quotation marks and citation omitted); *Siegmund v. Xuelian Bian*, No. 16-62506-CIV, 2019 WL 473739, at *3 (S.D. Fla. Feb. 6, 2019) (holding that sanctions were required unless the failure was substantially justified) (citing Rule 37 and *Allstate Ins. Co. v. Palterovich*, No. 04-21402-CIV, 2008 WL 2741119, at *2 (S.D. Fla. July 12, 2008)).

Next, Plaintiff appears to contend that her nonappearance was substantially justified,[9] first, because there was "no urgency in conducting Plaintiff's deposition on June 7," but also (somewhat contradictorily), because "Plaintiff was prepared to go forward with her deposition on June 7, 2023." [Doc. 32 at 6-8.] As to the urgency, the relevant question before the Court is not whether Defendant was substantially justified in pursuing Plaintiff's deposition when it did—at the mid-point in discovery—but rather, **whether Plaintiff's nonappearance was substantially justified**. And, "[i]f Plaintiff had felt [s]he was justified in not

---

[9] And Plaintiff does not argue that the deposition was not properly noticed.

attending h[er] deposition, the proper course would have been to file a motion for a protective order or arrange a conference with the Court." *Jones v. Sanofi-Aventis U.S., Inc.*, No. 1:08-CV-590-TWT, 2009 WL 535756, at *3 (N.D. Ga. Mar. 2, 2009). But Plaintiff "did not do so. Instead, [s]he just failed to show up." *Id.* As a result, Plaintiff's argument about urgency does not serve to justify her failure to attend her own deposition. *Id.*; *see also Functional Prod. Trading, S.A. v. JITC, LLC*, No. 1:12-CV-00355-WSD, 2013 WL 4482507, at *3 (N.D. Ga. Aug. 20, 2013) ("Janitzek was not 'substantially justified in his decision to ignore the Court's order' to attend the February 2013 deposition, including because Janitzek failed to seek a protective order.")

Plaintiff also contends that she was prepared to proceed with her deposition, but that she was somehow justified in not appearing because:

> Defendant created the unnecessary issues with the local counsel and attorney representation for Plaintiff and then took unfair advantage in this case by making it impossible for the deposition of Plaintiff to occur as noticed without local counsel for Plaintiff appearing.

[Doc. 32 at 7.] But that is not at all what happened. To recount: at some point, apparently well before this lawsuit began,[10] Plaintiff retained CRLA as counsel.

---

[10] Given Mr. Hansz's statements that he did represent Plaintiff in some capacity as of October 2022.

Even so, Plaintiff was originally represented in this case by Walter Yarbrough of Yarbrough Law, LLC, a local attorney, presumably because CRLA did not have internal counsel who was admitted to practice before this Court.  [*See* Doc. 1.] Then, on February 28, 2023, Mr. Silverman began his employment with CRLA, and on March 3, Mr. Silverman and CRLA became substitute counsel for Plaintiff. [*See* Docs. 4, 5; *see also* Doc. 36-15 (Decl. of Lawrence Silverman) ¶ 3.]  Mr. Silverman attests that he never spoke with Plaintiff, and was merely "instructed as an associate of the firm to file" Plaintiff's first amended complaint on March 20. [*See* Doc. 36-15 ¶ 3; *see also* Doc. 6.]

On April 14, roughly a month and a half after starting with the firm, Mr. Silverman submitted his resignation notice to CRLA, with an effective date of June 2, which was itself still over a month and a half away at the time.  [Doc. 36-15 ¶ 4.]  Despite this, "CRLA exhibited no efforts during the forty-nine (49) day advance notice period to replace [Mr. Silverman] with another attorney admitted to practice in this Court," but also "never asked that [Mr. Silverman] remain as attorney of record in this case after June 2, 2023."  [*Id.* ¶ 5.]  When Plaintiff's deposition notice arrived, Mr. Silverman immediately forwarded it to CLRA.  [*Id.* ¶ 6.]  A week later, on May 22, CRLA cut off Mr. Silverman's access to the firm's systems, making it "essentially impossible" for Mr. Silverman to "handle any of

20

the CRLA cases" he nominally remained counsel of record on.  [*Id.* ¶ 7.]  And "[d]espite the [] advance notice of [Mr. Silverman's] resignation, CRLA did not arrange for another Georgia lawyer to take over this case, and [Mr. Silverman] was never instructed by CRLA to object to, or request a continuance of, Plaintiff's deposition," despite believing that Mr. Newburger would have rescheduled the deposition if a timely request had been made.  [*Id.* ¶ 8.]  Ultimately, after cutting him off on May 22, CRLA and Mr. Hansz never contacted Mr. Silverman again to discuss Plaintiff or her case, even though the latter was "available to defend the deposition on June 7, had [he] been asked to do so."  [*Id.* ¶ 10.]

What the foregoing makes clear is that, despite having the deposition notice for weeks, and despite having notice of Mr. Silverman's departure for more than a month, CRLA did nothing to ensure that an attorney admitted to practice here was available to defend Plaintiff's deposition, and indeed worked to prevent Mr. Silverman from having access to the firm resources needed to do so.  And despite having represented Plaintiff for the duration, CRLA now tries shift blame to Defendant because it opposed Mr. Hansz's *pro hac vice* application and because Defendant sought to proceed with the deposition despite knowing of Mr. Silverman's impending withdrawal.  [*See* Doc. 32 at 7.]  But contrary to Plaintiff's line of argument, Mr. Hansz's application was returned to him because the forms

he submitted were filled out incorrectly [*see* Doc. Entry dated May 17, 2022], and Defendant only understood the full extent of Plaintiff's representation problems *after* Mr. Silverman's withdrawal request on June 5—more specifically, when Mr. Hansz emailed Mr. Newburger while the latter was already in route to the deposition. [*See* Doc. 29-2 at 3-5.]  Accordingly, any fault lies with CRLA and its attempts to prosecute Plaintiff's case in this District without the assistance of an attorney licensed to practice here.  *See LaFavors v. Solorzano*, No. 4:12-CV-30-RH/CAS, 2014 WL 6473590, at *2 (N.D. Fla. Nov. 17, 2014) ("Defendant was not obligated to make efforts to ensure Plaintiff's compliance with the deposition notice, and his arguments that Defendant should have done more to reach him are frivolous.").[11]  And even if that were not the case, as emphasized above, had Plaintiff been justified refusing to attend her deposition, she should have lodged a timely objection with opposing counsel or filed a motion for protective order.

---

[11] Even if the conduct described were not so clearly unjustified, Plaintiff's response points to nothing else that would substantially justify her failure to appear, which undercuts any opposition to Defendant's motion.  *See French v. M&T Bank,* 315 F.R.D. 695, 697 (N.D. Ga. 2016); *see also Mills v. Anderson*, No. CV606-88, 2008 WL 80303, at *1 (S.D. Ga. Jan. 7, 2008) ("Through the plaintiff's own inaction, therefore, the Court has been unable to assess the willfulness of his conduct.  Since the plaintiff bears the burden of justifying his conduct, he must suffer the consequences of his silence.").

*Functional Prod. Trading*, 2013 WL 4482507, at \*3 (observing that a party must "timely inform" the opposing party of problems with attendance to mitigate any consequences of nonappearance); *see also LaFavors*, 2014 WL 6473590, at \*2 ("It was unacceptable that Plaintiff did not alert opposing counsel ahead of time.").

This leaves Plaintiff's final argument against sanctions—that Defendant failed to include, in its motion for sanctions, a certification that it had attempted to confer with Plaintiff in an effort to resolve the issue without court intervention.[12] [Doc. 32 at 8 (citing Fed. R. Civ. P. 37(d)(1)(B)).] However, Rule 37(d)(1)(A) clearly anticipates two types of failures for which sanctions might be imposed: one for failing to "appear for [a] person's deposition", and one for failing to "serve its answers, objections, or written response" to interrogatories; and the Rule only imposes the certification requirement on motions for sanctions involving the latter, *see* Rule 37(d)(1)(B) (requiring certification for motions for sanctions for "failing to answer or respond" without any mention of requiring the same for motions for failing to appear). Thus, "by its plain language, Rule 37(d)(l)(B)'s requirement that a movant certify it has conferred in good faith applies only to a 'motion for

---

[12] Notably, Plaintiff does not contend that Defendant violated its meet-and-confer obligation, just that Defendant failed to follow Rule 37(d)(A)(B)'s procedural requirements.

sanctions for failing to answer or respond,' not for failing to attend a deposition."
*Gonzalez v. Batmasian*, 319 F.R.D. 403, 404 (S.D. Fla. 2017) (citing Fed. R. Civ.
37(d)(1)(B) and *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275,
302 (3d Cir. 2000)); *cf. Graham v. Famous Dave's of Am., Inc.*, No. CV DKC 19-
0486, 2020 WL 5653231, at *15 (D. Md. Sept. 23, 2020) ("The rule states that '[a]
motion for sanctions *for failing to answer or respond* must include a
certification . . . .") (emphasis in original).[13]  Regardless, the undersigned finds that
Mr. Newburger's declaration, attached to the motion for sanctions and laying out
the communications between the parties regarding the deposition, fulfills the
certification requirement, as it demonstrates that Defendant "attempted to confer"
with Plaintiff's counsel "in an effort to obtain" her appearance at her deposition, as

---

[13] The undersigned is aware of contrary district court authority in this Circuit, largely in relation to 30(b)(6) depositions in which a corporate representative could not answer certain questions (as opposed to simply not appearing).  However, none of those cases took up the issue in more than a perfunctory way, and none addressed the very clear language in Rule 37(d)(1)(B) only imposing the certification requirement in relation to the failure to answer or respond, but not in relation to a failure to appear.  *See, e.g., Curtis v. SNL Distrib. Servs. Corp.*, No. 1:18-CV-04542-JPB, 2020 WL 10574132, at *5 (N.D. Ga. June 29, 2020); *Agilysys, Inc. v. Hall*, No. 1:16-CV-3557-ELR-JFK, 2019 WL 3483173, at *3 (N.D. Ga. May 29, 2019).  Because those cases never took up the issue before the Court in a meaningful way, the undersigned declines to follow them.

required by Rule 37(d)(1)(B).[14]  As such, Plaintiff's final argument against the imposition of sanctions fails.

Based upon the foregoing, the undersigned concludes that Plaintiff's deposition was properly noticed, that Plaintiff's failure to appear was not substantially justified, and that there are no other circumstances making it unjust to impose sanctions on Plaintiff for failing to appear at her deposition.  It is therefore **RECOMMENDED** that Defendant's motion for sanctions be **GRANTED**.  If the District Judge adopts this recommendation, it is further **RECOMMENDED** that Defendant be **DIRECTED** within **fourteen (14) days** to file materials supporting the fees and expenses incurred traveling to attend Plaintiff's aborted deposition, as well as fees and expenses incurred litigating the motion for sanctions; and that Defendant be allowed to respond to the reasonableness of the fees and expenses sought within **fourteen (14) days** of Defendant's submission.

## IV.    Plaintiff's Request Pursuant to 28 U.S.C. § 1927

As noted, Plaintiff has moved for sanctions under 28 U.S.C. § 1927, based upon Defendant (1) refusing to reschedule Plaintiff's deposition; (2) not disclosing

---

[14] Neither Rule 37 nor the commentary on it specify a form this certification must take, and the undersigned is not aware of any binding authority on the issue.

the telephone recordings earlier; and (3) threatening sanctions and attempting to convince Plaintiff to stipulate to summary judgment.  [Doc. 35-1 at 10-11.]

"28 U.S.C. § 1927 authorizes federal courts to require any attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'"  *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1280-81 (11th Cir. 2010).  To impose sanctions, the moving party must demonstrate, among other things, that the attorney actually engaged in "unreasonable and vexatious" conduct and that such "unreasonable and vexatious" conduct in fact "multiplie[d] the proceedings."  *Id.*

It is abundantly clear that Plaintiff cannot satisfy either of these requirements. First, defense counsel was unaware that Plaintiff's deposition needed to be rescheduled until it was too late to do so.  And as discussed in greater detail above, it was the conduct of Plaintiff's counsel, not defense counsel, that left Plaintiff without adequate legal representation.  As a result, the Court cannot find Mr. Newburger engaged in unreasonable or vexatious conduct in relation to Plaintiff's deposition, or that any of Mr. Newburger's conduct (rather than Plaintiff's counsel's conduct) resulted in Plaintiff's failure to appear.

Second, as to the disclosure of the telephone calls, Mr. Newburger only

26

sought out the recordings upon reviewing Plaintiff's now-withdrawn, shown-to-be-false statements that were submitted in opposition to summary judgment in late-June 2023, and disclosed the recordings to Plaintiff on mid-July 2023, only a few days after receiving them.  [*See* Doc. 36-1 (2nd Newburger Decl.) at 7-8; *see also* Doc. 30-2 (Decl. of Mirabahn Cairobe).]  While Plaintiff contends that the parties had "largely litigated the case" by this point in time, that is simply not true, as Defendant had not even taken Plaintiff's deposition and the discovery period was only halfway complete.  [*See* Doc. 17 (scheduling order).]  Defendant was under no obligation to obtain materials from a third party on Plaintiff's preferred timeline, and having obtained the recordings, it disclosed them expeditiously to Plaintiff. Plaintiff does not explain how this conduct is either unreasonable or vexatious, much less cite authority in support; and the Court is unaware of any.  Moreover, it was only by obtaining these recording that Defendant was able to muster sufficient evidence to conclusively resolve Plaintiff's claims, so the Court is also at a loss for how Defendant's conduct multiplied any proceedings in this case.

Finally, Plaintiff complains that Defendant threatened sanctions and refused to allow Plaintiff to dismiss the case voluntarily.  But Defendant's sanctions motion is entirely meritorious, as was its request for summary judgment; accordingly, there is nothing unreasonable or vexatious in submitting them to the Court for resolution.

And, to be frank, it was Plaintiff's combined (1) refusal to stipulate to summary judgment and (2) insistence on a voluntary dismissal that multiplied the proceedings in this case. Indeed, summary judgment had been fully briefed for nearly a month when Plaintiff finally moved to dismiss her case. [*See* Doc. 31 (reply in support of summary judgment, filed June 26, 2023); Doc. 35 (motion to dismiss and for sanctions, filed July 28, 2023).] Had Plaintiff simply withdrawn her opposition to Defendant's motion for summary judgment, this case would likely not be in its present posture.

In the end, Plaintiff has not shown that defense counsel engaged in unreasonable or vexatious conduct or that defense counsel's conduct, as opposed to Plaintiff or Plaintiff's counsel's conduct, multiplied the proceeding in this case. As a result, the undersigned **RECOMMENDS** that Plaintiff's request for sanction be **DENIED**. [Doc. 35.]

## MR. JEONG'S REQUEST TO WITHDRAW

The Court turns to Mr. Jeong's request to withdraw as counsel of record. [Doc. 40.] Mr. Jeong's filings comply with the procedure set forth in Local Rule 83.1(E), which requires, among other things, that he provide a certificate of consent with the Court that has been executed by the client, which Mr. Jeong has done. [*See* Doc. 40 at 2.] With Mr. Hansz's admission to practice in this Court, and no

28

objection by Defendant at oral argument, Mr. Jeong's request is **GRANTED**. [Doc. 40.] The Clerk is **DIRECTED** to terminate Mr. Jeong as Plaintiff's counsel of record.

## CONTINUING PROCEEDINGS

While the dismissal of Plaintiff's claims will serve to deprive the Court of jurisdiction over the merits of the case, the Court retains jurisdiction to consider a limited set of collateral issues, including the imposition of costs, fees, and sanctions. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)), *cert. denied*, 142 S. Ct. 1413 (2022). Defendant has already served on Plaintiff a Rule 11 safe harbor warning letter, and stated at oral argument that it wishes to file a motion for sanctions under Rule 11. The undersigned therefore **RECOMMENDS** that Defendant be given **thirty (30) days** from the date the District Court rules on this recommendation to file any motion for Rule 11 sanctions.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** [Doc. 25]; that Plaintiff's motion to dismiss be **DENIED AS MOOT** [Doc. 35]; that Defendant's request for sanctions

29

be **GRANTED** [Doc. 29], and that Plaintiff's request for sanctions be **DENIED** [Doc. 35]. Mr. Jeong's request to withdraw, meanwhile, is **GRANTED**. [Doc. 40.]

If the foregoing recommendations are adopted, the undersigned further **RECOMMENDS** that Defendant be **DIRECTED** to submit evidence in support of its fees and expenses in relation to its already filed motion for sanctions, and be given an opportunity to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 within **thirty (30) days** of the order ruling on this recommendation.

IT IS SO ORDERED AND RECOMMENDED, this 2nd day of October, 2023.

JOHN K. LARKINS III
United States Magistrate Judge