IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Mirabahn Cairobe, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Case No. 1:23-cv-00486-CAP-JKL |
| | § | |
| Zwicker & Associates, P.C., | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927, 15 U.S.C. § 1692k, AND THE COURT'S INHERENT POWER**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendant Zwicker & Associates, P.C. ("Zwicker") submits this Memorandum of Law in support of its Motion For Fees and Costs Pursuant to 28 U.S.C. § 1927, 15 U.S.C. § 1692k, and the Court's Inherent Power, and in support of such Motion would respectfully show the following:

**FACTS GIVING RISE TO THIS MOTION**

Zwicker has cited below to portions of the Court's file. It also relies on the accompanying Declaration of Joon Jeong, Esq. (Doc. 52-2), the exhibits to that Declaration, and the transcript of the September 25, 2023 hearing in this case (Doc. 50, referred to as "Tr."). All of such materials are incorporated herein by reference.

-1-

**Conduct Prior to the September 25. 2023 Hearing**

Plaintiff commenced this action on February 1, 2023, asserting that Zwicker violated the FDCPA in multiple respects. Her original Complaint (Doc. 1) acknowledged in Paragraph 9 that the debt which was the subject of Zwicker's collection efforts was "an AMEX business credit line." Apparently realizing that such allegation pled her out from under the FDCPPA,[1] on March 21, 2023, her attorneys filed her First Amended Complaint (Doc. 6) in which they omitted that allegation and in Paragraph 27 claimed falsely that the debt was a consumer debt.

The First Amended Complaint made the following claims:

  a. that Zwicker violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff when it allegedly knew that she was represented by counsel (Doc. 6, ¶¶ 22, and 27(a) and (b));

  b. that Zwicker violated 15 U.S.C. § 1692g(b) by continuing its collection efforts before responding to a request for debt validation (Doc. 6, ¶¶ 23, and 27(d)); and

  c. that Zwicker violated 15 U.S.C. §1692(f) by collecting or attempting to collect an amount not permitted by law because Plaintiff was a victim of identity theft who never had an account

---

[1] The FDCPA applies only to "personal, family, or household obligations. 15 U.S.C. § 1692a(5).

-2-

with American Express (Doc. 6, ¶¶ 7, 8, 10, 12, 16, 20, and 27(c)). Each of those claims was a material misrepresentation of fact to the Court.

In May, 2023, Gary Hansz applied for admission *pro hac vice* in this case (Doc. 18). When Zwicker opposed that application on the grounds that Mr. Hansz was a material fact witness, it included a transcript of the conversation between Mr. Hansz and a Zwicker employee in which Hansz represented that his firm (CRLA) was not representing Plaintiff in connection with the collection matter and that they represented her only on her FCRA claims (Doc. 19-1).[2] Rather than withdraw the false claim that Zwicker had communicated with a party it knew to be represented by counsel, CRLA doubled down, filing a reply which referred to the transcript as "some unauthenticated transcript of an *alleged* conversation between Gary Hansz and Defendant's employee". (Doc. 21, p. 1, emphasis added). That characterization of the call transcript was an additional misrepresentation of fact to the Court. Furthermore, despite being presented with the transcript, CRLA and Plaintiff failed to withdraw the false allegations that Zwicker had communicated with a consumer whom it knew to be represented by counsel.

---

[2] Zwicker is not a data furnisher, and any FCRA claims would have had nothing to do with Zwicker.

On June 5, 2023, Zwicker filed its Motion for Summary Judgment (Doc. 25). That Motion was supported by the Declaration of Gary T. Shore (Doc. 25-3) which both authenticated the aforesaid call transcript and attested to the sending of a response to Plaintiff's request for debt validation and the absence of any returned mail relating to that sending. Rather than withdraw the false allegations as to communicating with a represented consumer and failing to validate the debt, CRLA and Plaintiff doubled down again, filing a response that included Declarations by Plaintiff (Doc. 30-2) and Hansz (Doc. 30-4), both of which were false. Respondents also filed a response brief (Doc. 30) and a response to Zwicker's Statement of Facts (Doc. 30-1), each of which made numerous material misrepresentations of fact as to the alleged identity theft, the alleged communication with a represented party, and the alleged failure to validate.

Among the material misrepresentations to the Court was the statement in the Hansz Declaration that: "During the conversation, I informed the caller that CRLA was not representing Mirabahn Cairobe in the underlying debt defense of the state court lawsuit filed by Zwicker & Associates, PC on behalf of American Express and against Mirabahn Cairobe." Doc. 30-4, ¶ 5). In fact, Mr. Hansz made no mention of a suit in the conversation at issue.

On June 29, 2023, Zwicker filed its summary judgment reply brief (Doc. 31) together with copies of the file-stamped state court Complaint (Doc. 31-1) and the

-4-

return of service (Doc. 31-2) from the state court action that Zwicker filed against Plaintiff. Those documents showed that: (1) on the date of the conversation described in the Hansz Declaration there was no state court action; (2) that the state court suit was not filed until almost two months after the conversation; and (3) that the state court suit was not served on Plaintiff until almost two months after that. Despite the evidence that he could not possibly have been discussing the state court suit because it did not exist, Hansz did not withdraw his false declaration. **As of the date of filing of this brief Hansz still has not withdrawn that declaration notwithstanding the Court's admonishments in the September 25, 2023 hearing regarding his duty to do so under Rule of Professional Conduct 3.3.** ("No, I will not let that sit there. I will withdraw that declaration." Tr. p. 22, l. 16-17.)

After receipt of Plaintiff's summary judgment response Zwicker's counsel was able to obtain recordings from American Express of two calls in which Plaintiff called American Express and identified herself as a customer, providing her personally identifying information and her account numbers. Those call recordings showed that Plaintiff's First Amended Complaint (Doc. 6) and her Declaration (Doc. 30-2) were false and that the representations to the Court in Docs. 30 and 30-1 were false.

On July 13, 2023, the recordings were produced to Mr. Jeong (who by then was Ms. Cairobe's attorney of record). When production of the call recordings did

not generate an immediate withdrawal of the numerous false representations to the Court, on July 21, 2023, Zwicker served a Rule 11 safe harbor notice on Mr. Jeong, providing Plaintiff with the opportunity to withdraw the summary judgment response without consequence.

Instead of withdrawing Docs. 30, 30-1, 30-2, and 30-4 (all of which make false representations to the Court and the latter two of which do so in sworn declarations), Plaintiff's attorneys sought to evade their duties under RPC 3.3 by moving to dismiss this action. The motion to dismiss (Doc. 35) was accompanied by the Declaration of Attorney Joon Jeong (Doc. 35-2).

**The September 25. 2023 Hearing**

On September 25, 2023, Judge Larkins held a hearing on five pending motions. The transcript of that hearing was filed as Doc. 50. During the hearing Plaintiff's counsel made the following admissions on the record:

> a. That Plaintiff's Declaration (Doc. 30-2) was false. Tr. p. 6, l. 23 – p. 7, l. 2; p. 29, l. 11 – 14.
>
> b. That Plaintiff was, in fact, the obligor on the account at issue. Tr. p. 4, l. 23 – p. 5, l. 11.
>
> c. That Mr. Jeong's actions were undertaken in reliance upon the information and assurances from CRLA. Tr. p. 29, l. 1 – 10.
>
> d. That the filings by Mr. Jeong were prepared by CRLA. *Id.*

-6-

In addition, in response to questions from the Court, Gary Hansz was unable to explain how his Declaration (Dc. 30-4) could have been true, given the dates on which the state court suit against Ms. Cairobe was filed and served. Tr. p. 18, l. 20 – p. 22, l. 17.

Following that hearing Mr. Hansz did nothing to withdraw the false Declarations. After three days passed with no action by him, Mr. Jeong attempted to do the right thing and withdrew both his Declaration and that of Ms. Cairobe (Docs. 44 and 45). To date, Docs. 30, 30-1, and 30-4 remain a part of the record and have not been withdrawn by Mr. Hansz. Perhaps unsurprisingly, none of the dialogue between the Court and Mr. Hansz was sufficient to prompt him to withdraw his false declaration.

## ARGUMENT

15 U.S.C. § 1692k provides, in pertinent part:

> On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 .S.C. § 1692k(a)(3).

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required

>by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Court has inherent authority to sanction improper conduct and may order Plaintiff and/or her attorneys to pay Zwicker's attorney's fees and costs "for actions taken in bad faith, vexatiously, wantonly, or for oppressive reasons."

**1.  Zwicker is entitled to Fees and Costs pursuant to 15 U.S.C. § 1692k(a)(3)**

The FDCPA was passed to "eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692. Under the FDCPA, a prevailing plaintiff is entitled to actual damages, up to $1,000 in statutory damages (even in the absence of actual damages), together with attorney's fees and costs. 15 U.S.C. § 1692k(a). The strict liability imposed by the FDCPA presents the potential for abuse, and Congress provided protection for defendants where are subjected to such abuse. "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).

"Typically, bad faith and harassment are found when 'plaintiff's knowledge that a claim was meritless [is] proven by plaintiff's own contradictory testimony or other evidence.'" *Valenzuela v. Medicredit, Inc.*, No. 6:20-cv-124-RBD-GJK, 2021

-8-

U.S. Dist. LEXIS 62306, at *5 (M.D. Fla. Mar. 29, 2021), (citing *Gillis v. Deutsche Bank Tr. Co. Americas*, 2016 U.S. Dist. LEXIS 16966, 2016 WL 551765, *3 (M.D. Fla. Jan. 26, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 16967, 2016 WL 540300 (M.D. Fla. Feb. 11, 2016).

As the record shows, every claim made by Plaintiff is false. While she might try to blame her attorneys for leading her astray, the admittedly false declaration that she executed in opposition to Zwicker's Motion for Summary Judgment leaves no doubt as to her complicity. Plaintiff's conduct evidences a course of bad faith commencing with the false police report that she filed a mere nine months after calling American Express to discuss her accounts and culminating in the false declaration that was filed as Doc. 30-2.

Plaintiff's false complaint, standing alone, should suffice to satisfy both the "bad faith" and "for the purpose of harassment" elements. But her willingness to execute a false declaration leaves no doubt as to her bad faith and intent to harass. For that matter, it simply is not credible that in the nine months between her calls to American Express and her false police report she forgot that: (1) she and her company had an account with American Express; and (2) she owed over fourteen thousand dollars on that account.

Zwicker asserts that the Court should find that Plaintiff filed this suit in bad

faith and for the purposes of harassment and order her to pay Zwicker's attorney's fees and costs incurred in defending this action.

**2.      Zwicker is entitled to Fees and Costs pursuant to 28 U.S.C. § 1927**

28 U.S.C. § 1927 authorizes the Court to order Plaintiff's attorneys to pay Zwicker's attorney's fees and costs if: (1) the attorney engages in "unreasonable and vexatious" conduct; and (2) such conduct "multiplies proceedings, meaning the proceedings would not have been conducted absent the complained-of conduct." *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007).

> The purpose of § 1927 is to penalize attorneys whose "conduct is so egregious that it is tantamount to bad faith." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (quotation marks omitted); *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997) (stating that § 1927 is "penal in nature").

*Oliva v. NBTY, Inc.*, No. 13-14254, 583 F. App'x 877, 880, 2014 U.S. App. LEXIS 18040 (11th Cir. 2014). This Court has stated that the purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them." *United States ex rel. Raven v. Ga. Cancer Specialists I*, No. 1:11-CV-00994-CAP, 2021 U.S. Dist. LEXIS 172488, at *21-22 (N.D. Ga. Mar. 30, 2021), quoting *Footman v. Cheung*, 341 F.Supp.2d 1218, 1223 (M.D. Fla. 2004).

Section 1927 authorizes the Court to assess attorney's fees against a law firm

and counsel "who willfully abuse judicial process by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, (11th Cir. 1991) (*citing Roadway Express Inc. v. Piper*, 447 U.S. 752 (1980)). "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008). However, an award under § 1927 may be imposed only against the offending law firm and attorneys and not their client. *United States v. Int'l B'hd of Teamsters, Chauffeurs*, 948 F.2d 1338, 1345 (2d Cir. 1991).

To qualify as "unreasonable and vexatious," the attorney's conduct must be "tantamount to bad faith;" that is, the attorney must "knowingly or recklessly pursue a frivolous claim." Id. Whether the attorney has engaged in such conduct is adjudged using an "objective standard," namely, "how a reasonable attorney would have acted under the circumstances." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010). Thus, "objectively reckless conduct" is sufficient to justify sanctions "even if the attorney does not act knowingly and malevolently." *Id*.

In determining whether an attorney acted in bad faith, a court may rely on the totality of the circumstances. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189-90 (3d Cir. 2002). Even if discrete instances of an

-11-

attorney's conduct would not have been sanctionable, a court may nevertheless find bad faith based on the attorney's conduct "considered as a whole." *Id.*

As described above and in Zwicker's Motion for Rule 11 Sanctions, the evidence shows that CRLA and its attorneys engaged in a pattern of vexatious conduct through the course of this case. This began with its First Amended Complaint, which altered Plaintiff's allegations to withdraw the admission in the original Complaint that the debt at issue was a business account. When presented with the transcript (and then the recording) of the Hansz call, they did not withdraw the claim under Section 1692c of the FDCPA. Instead, they maintained that claim, filing the Declaration of Gary Hansz (Doc. 30-4) in which Mr. Hansz falsely claimed to have been discussing a lawsuit that: (1) he did not mention; and (2) did not even exist until almost two months later. Presented with evidence that Zwicker had mailed a response to CRLA's request for debt validation they tried to persuade the Court that summary judgment should be denied on the claim under Section 1692g(b) of the FDCPA, even though the statute and interpretive case law are clear that receipt is irrelevant. And when confronted with the recordings of Plaintiff's calls to American Express they led a motion to dismiss and motion for sanctions against Zwicker's counsel, ignoring their ethical obligation to withdraw their false filings.

CRLA and its attorneys acted in bad faith over the course of this lawsuit, from beginning to end. Had they simply withdrawn each of the false filings, the Court

could have granted summary judgment to Zwicker without the need for the briefing on dismissal and sanctions and the hearing on September 25, 2023. Even today, CRLA and Hansz have not withdrawn the false declaration that Hansz executed.

Such a course of conduct makes sanctions under section 1927 particularly appropriate. "What is especially troubling is that Plaintiff's counsel failed to dismiss any of these claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion.  Thus, this Court finds that this is one of the rare cases where sanctions are justified." *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1306 (M.D. Fla. 2010). Such is the case here.

Even more disturbingly, the refusal to stop pursuing a meritless set of claims is a pattern of behavior by CRLA that has not been stopped by prior sanctions orders. *See, e.g.*, *Dukes v. LVNV Funding, LLC*, No. 6:21-cv-01342-GAP-GJK,, 2023 U.S. Dist. LEXIS 32680 (M.D. Fla. Feb. 27, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 46453, (M.D. Fla. May 19, 2023); *Valdes v. LVNV Funding LLC*, No. 6:21-cv-1438-RBD-EJK, 2023 U.S. Dist. LEXIS 131085 (M.D. Fla. July 28, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 196653 (M.D. Fla. Nov. 2, 2023). When one considers the fact that the First Amended Complaint in this case was filed just 22 days after the report and recommendation in *Dukes*, it becomes clear that CRLA and its attorney simply have no regard for their duty to cease pursuit of claims that they know (or should know) are meritless.

CRLA cannot avoid liability under § 1927 by saying that plaintiff lied to it about owing the debt. That excuse, poor as it is, does not justify the false allegation that the account was a consumer debt, it does not justify the continued pursuit of the Section 1692c claim (once the call transcript was produced), it does not justify the continued pursuit of the Section 1692g(b) claim once Zwicker produced its debt validation response, and it does not justify the refusal to withdraw false filings and pursuit of dismissal and sanctions once it received the recordings of Plaintiff's calls to American Express. Section 1927 sanctions are appropriate for all fees incurred subsequent to the filing of the first Amended Complaint.

### 3. Zwicker is entitled to Fees and Costs pursuant to the Court's Inherent Power to Impose Sanctions

The Eleventh Circuit has clearly articulated the Court's inherent power to impose sanctions:

> Courts have the inherent power to police those appearing before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2133, 115 L. Ed. 2d 27 (1991). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 43, 111 S. Ct. at 2132 (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 1389, 8 L. Ed. 2d 734 (1962)). This power "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id*. at 44-45, 111 S. Ct. at 2132-33. A court may exercise this power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381, 133 S. Ct. 1166, 1175, 185 L. Ed. 2d 242 (2013) (citing *Chambers*,

> 501 U.S. at 45-46, 111 S. Ct. at 2133-34). The dual purpose of this power is to vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole. *See Chambers*, 501 U.S. at 46, 111 S. Ct. at 2133. The key to unlocking a court's inherent power is a finding of bad faith. *See Sciarretta*, 778 F.3d at 1212.

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017),

While direct evidence of subjective bad faith is sufficient to impose sanctions, it is not necessary. *Id*. at 1224. Instead, a court may conclude a party or an attorney acted in bad faith where its conduct is so egregious that it is tantamount to bad faith. *Id*. at 1225. Such a finding is warranted where a party or an attorney "knowingly or recklessly raises a frivolous argument." *Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 813 Fed. Appx. 368, 375 (11th Cir. 2020), *citing Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

As described above and in Zwicker's Rule 11 Motion, virtually every filing in this case by plaintiff and her attorneys contains material misrepresentations of fact. Every time they were given notice of their misrepresentations and the opportunity to withdraw them, they doubled down. The trail of bad faith filings exhibits a reckless disregard for the truth and for the duty of candor to a tribunal. Zwicker asks that any award of fees and costs be made, in the alternative, under the Court's inherent power to strengthen such an award in the event of appellate review.

WHEREFORE, PREMISES CONSIDERED, in the alternative to its request for Rule 11 sanctions Defendant Zwicker & Associates, P.C. prays that the Court make alternative awards of fees and costs against Plaintiff under § 1692k(a)(3), against her attorneys CRLA and Hansz under § 1927, and against all of them under the Court's inherent power.  Zwicker further prays that it be granted all such other and further relief, at law or in equity, as to which it may be justly entitled.

Dated this 8th day of November, 2023.

Respectfully submitted,

ZWICKER & ASSOCIATES, P. C.

By its Attorneys,

/s/ Manuel H. Newburger
Manuel H. Newburger
Barron & Newburger, P.C.
7320 N. MoPac Expy., Suite 400
Austin, Texas 78731
(512) 649-4022
Fax: (512) 279-0310
mnewburger@bn-lawyers.com

Keith D. Taylor, Esq.     GA Bar # 141357
3505 Koger Boulevard, Suite 125
Duluth, GA 30096
Telephone: (678) 924-9644
Facsimile: (678) 924-9652
Email: GeorgiaLtigation@Zwickerpc.com

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2023, a true copy of the foregoing Memorandum of Law was served on all attorneys of record via the Court's ECF system and upon attorneys Silverman and Jeong via email.

/s/  Manuel H. Newburger
Manuel H. Newburger

**Service List:**

Gary Alan Hansz
Credit Repair Lawyers of America
39111 Six Mile Road
Suite 142
Livonia, MI 48152
gary.hansz@crlam.com

Joon Jeong
5 Old Peachtree Road
Suite 250
Suwanee, GA 30024
info@jjeonglaw.com

Lawrence Adam Silverman
Credit Repair Lawyers of America
39111 Six Mile Road
Suite 142
Livonia, MI 48152
404-583-4350
Email: las@seconsumerlaw.com